**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 10-2-DLB**

**CHRISTOPHER NORTHERN**                                                                     **PLAINTIFF**

vs.                        **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                **DEFENDANT**

\* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Christopher Northern applied for supplemental security income (SSI) on February 26, 2008. (Tr. 68). At the time of filing, Plaintiff was 48 years old and alleged a disability onset date of February 1, 2008. *Id.* Plaintiff alleges he is unable to work due to "nerves", high blood pressure, a heart condition, and back, neck and knee pain. (Tr. 95). Plaintiff has an eighth grade education and was previously employed as a farmhand. (Tr. 21-22). He has not worked for the past six years. (Tr. 22).

Plaintiff's claim was denied initially and again on reconsideration. (Tr. 52-55, 56-58). At Plaintiff's request, an administrative hearing was conducted via video conference on

1

June 4, 2009 before Administrative Law Judge (ALJ) Joan A. Lawrence. (Tr. 9, 59). On August 31, 2009, ALJ Lawrence ruled that Plaintiff was not disabled and therefore not entitled to supplemental security income. (Tr. 9-17). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on November 6, 2009. (Tr. 1-3).

The present action was filed on January 5, 2010. (Doc. #2). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. #10, 11).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Moreover, even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence

2

would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 25, 2008, the date of application. (Tr. 11). At Step 2, the ALJ found that Plaintiff's anxiety, rule in panic disorder, and back, neck and knee pain constituted severe impairments within the meaning of the regulations. (Tr. 11-12). The ALJ also found that Plaintiff's allegations of hypertension and a heart condition were not supported by any medical evidence and, therefore, not severe impairments. (Tr. 12).

At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12). Specifically, the ALJ evaluated Plaintiff's mental impairments under paragraphs B and C of Listing 12.06 (Mental Disorders) and concluded that Plaintiff's condition did not meet or equal the necessary

3

criteria under either paragraph. (Tr. 12-13).

At Step 4, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform medium work with no more than occasional crouching, crawling, and climbing ramps, stairs, ladders, ropes and scaffolds. (Tr. 14). Additionally, the ALJ found Plaintiff's impairments require him to avoid even moderate exposure to fumes, odors, dusts, gases and poor ventilation. (Tr. 14). The ALJ also found that Plaintiff has the ability to understand, remember, and carry out simple instructions. (Tr. 14). However, Plaintiff's mental impairments require a low stress job with little contact with people. (Tr. 14). Based upon this RFC, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a farmhand. (Tr. 15-16).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ determined that despite Plaintiff's inability to perform his past relevant work, there are a significant number of jobs available to him in the national and regional economies. (Tr. 16). Specifically, the vocational expert (VE) testified that Plaintiff would be able to perform the job of a dishwasher, hand packer, material handler, production worker, hand assembler and small parts inspector. (Tr. 16-17). Since the positions identified by the VE were representative of a significant number of jobs in the regional and national economies, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act. (Tr. 17).

**C.     Analysis**

Plaintiff advances two arguments on appeal. First, Plaintiff argues that the manner in which the ALJ dealt with the medical evidence was not in compliance with the agency's regulatory policy, and the Plaintiff's physical RFC is not supported by substantial evidence.

4

Specifically, Plaintiff contends that the ALJ improperly rejected the physical restrictions assessed by one-time consultative examiner Dr. Robert C. Hoskins in favor of non-examining agency reviewing sources, Jonathan Hughes and Dr. Carlos X. Hernandez. Second, Plaintiff contends that the Commissioner did not sustain his burden at Step 5 of the sequential evaluation because the hypothetical question posed to the VE did not accurately reflect Plaintiff's mental restrictions assessed by one-time psychological examiner Cristi M. Hundley, Ph. D. Each of these arguments will be addressed in turn.

### 1. The ALJ Properly Rejected Dr. Hoskins' Physical Assessment

Plaintiff asserts that the ALJ improperly weighed the medical evidence by favoring the opinion of non-examining sources over the opinion of one-time consultative examiner, Dr. Hoskins. Unlike treating source opinions, consultative examiners' opinions are not entitled to any "special degree of deference." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Atterberry v. Sec'y Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989) (physician who examined claimant only once was not a treating physician). While examining medical sources are generally given more weight than non-examining medical sources, all medical opinions are subject to evaluation. 20 C.F.R. § 416.927(d)(1); *see also* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical ... consultants ... may be entitled to greater weight than the opinions of treating or examining sources."). The weight given a medical opinion depends upon the extent to which it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2). When evaluating a medical opinion, a number of factors are considered, including (1) the examining relationship; (2) the

5

treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion was regarding an area in which the medical source specializes; and (6) any other factors which tend to support or contradict the opinion. *Id.* at 416.927(d).

In this case, ALJ Lawrence did not find Dr. Hoskins' determinations credible with regard to Plaintiff's ability to do work related activities and, therefore, rejected Dr. Hoskins' conclusions concerning Plaintiff's physical RFC. (Tr. 15). Specifically, Dr. Hoskins opined that Plaintiff "will have significant limitations for walking, climbing stairs, lifting and carrying." (Tr. 151). The ALJ found these restrictions to be inconsistent with Dr. Hoskins' own examination and unsupported by any objective medical findings or treating progress notes of record. (Tr. 15).

First, the ALJ found Dr. Hoskins' opinion that Plaintiff will have significant limitations was inconsistent with his own examination. (Tr. 15). The ALJ noted that Dr. Hoskins' examination revealed Plaintiff's deep tendon reflexes were unremarkable and Romberg testing and gait were normal. (Tr. 14, 150). Dr. Hoskins found that Plaintiff could sit/squat to and stand from a nineteen-inch chair with no discomfort and transfer to and from the examination table with only mild difficulty. (Tr. 14, 150). No sensory deficits were identified and tandem, heel and toe walks were performed. (Tr. 14, 150). Although Plaintiff had strong crepitus in the knees, Dr. Hoskins' musculoskeletal examination revealed no misalignment, asymmetry, crepitation, defects, tenderness, masses, effusions, instability, atrophy or abnormal strength/tone in the head, neck, spine, or extremities. (Tr. 150). Plaintiff also exhibited full range of motion in all extremities, only complaining of stiffness in his lumbar spine. (Tr. 152-53). The ALJ also observed that Dr. Hoskins was not a

6

treating physician, and he only examined Plaintiff on one occasion and appeared to base his conclusions on Plaintiff's subjective complaints. (Tr. 15). *See* 20 C.F.R. §416.929 (an individual's symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect the individual's ability to do basic work activities unless medical signs and laboratory findings show that there is a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms alleged); *see also Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (concluding doctor's report based upon plaintiff's subjective complaints did not constitute objective medical evidence).

The ALJ also found that Dr. Hoskins' assessment was tenuous and not supported by any current, objective findings in the record. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation."). Despite Dr. Hoskins' own lack of objective medical evidence, the record was devoid of any other objective evidence to support his conclusions, specifically due to the fact that Plaintiff has not seen a doctor in two or three years with the exception of an emergency room visit for abdominal pain in April 2008. (Tr. 14). Additionally, state agency reviewing physician, Dr. Carlos Hernandez, provided a physical RFC assessment that assessed a reduced range of medium work, also contradicting Dr. Hoskins' significant physical limitations. (Tr. 192-99). Furthermore, while Dr. Hundley primarily performed a mental status evaluation, she also observed that Plaintiff walked with an upright posture and normal gait. (Tr. 144). During her examination, the Plaintiff had no involuntary movements, and he did not use an assistive device and denied using one in his daily life. (Tr. 144).

7

Finally, the ALJ indirectly attacked the consistency of Dr. Hoskins' opinion with other record evidence, specifically Plaintiff's own testimony. (Tr. 14). Plaintiff testified that he is unable to work due to back, neck and knee pain. (Tr. 23). He stated his knees hurt so bad that sometimes he just falls down because of the pain. (Tr. 23). However, the ALJ noted that Plaintiff has not received the type of medical treatment one would expect for a totally disabled individual. (Tr. 14). As stated above, Plaintiff has not seen a doctor in two or three years, with the exception of an emergency room visit for abdominal pain in April 2008, and takes no medication. (Tr. 23-24, 209). Furthermore, the ALJ found that Plaintiff's admitted daily activities were not limited to the extent one would expect given his complaints of disabling pain. (Tr. 15). Plaintiff reported that he takes care of his own personal needs, prepares simple meals, feeds and waters the dog, sweeps the floor, does laundry, drives, shops for groceries, and mows the lawn with a push mower in ten to fifteen minute increments. (Tr. 24-25, 28,102-103). Therefore, substantial evidence existed to support the ALJ's decision to discredit Dr. Hoskins' limitations with regard to Plaintiff's physical RFC.

One final matter deserves comment. Plaintiff also asserts that the ALJ erred when she considered the RFC assessment completed by Jonathan Hughes, as he was a single decision maker (SDM) and not a physician or medical consultant. ALJ Lawrence mistakenly refers to this assessment as a "State Agency physician['s] opinion[]" and accords it weight "in finding that the claimant can perform a reduced range of medium work." (Tr. 14-15). As the Commissioner admits, SDM assessments are not opinion evidence and entitled to no weight. (Doc. #11, at 9 n.2).

In *Dewey v. Astrue*, the Eighth Circuit Court of Appeals remanded an ALJ's decision where the ALJ mistakenly credited an RFC assessment as being authored by a physician when it had actually been authored by a counselor, who was neither a physician or medical consultant. *Dewey v. Astrue*, 509 F.3d 447, 448 (8th Cir. 2007). In doing so, the ALJ gave controlling weight to the counselor's opinion that the plaintiff could perform light work and refused to give controlling weight to the treating physician's more restrictive RFC assessment. *Id.* at 449. Therefore, the Court concluded that the error was not harmless because, had the ALJ known the RFC assessment was not been completed by a physician or other qualified medical consultant, he may have reached a different result. *Id.* at 449-50.

Unlike *Dewey*, the Plaintiff has not brought forth any evidence to challenge whether, on this record, the ALJ's outcome would have been different had she known that SDM Hughes was not a physician or medical consultant. Furthermore, after the initial denial of benefits and on reconsideration, Hughes' assessment was affirmed and adopted by the second state agency consultant and physician, Dr. Carlos Hernandez.[1] (Tr. 192-99). *See Garcia v. Comm'r of Soc. Sec.*, No. 08-12943, 2009 WL 2843922, at * 8 (E.D. Mich. Aug. 31, 2009); *Zebulske v. Barnhart*, 04-49-B-W, 2004 WL 2378854, * at 2 n.2 (D. Me. Oct. 25, 2004). Plaintiff argues that it is unclear whether Dr. Hernandez reviewed anything in the record other than Hughes' assessment. While Plaintiff cites no evidence to support this assertion, even if it were true, the ALJ was still entitled to weigh Dr. Hernandez's opinion accordingly. *See* 20 C.F.R. § 416.927(d)(1). The ALJ noted that Dr. Hernandez's opinion

---

[1] Dr. Hernandez affirmed Hughes' RFC assessment except for making one substantive change. (Tr. 193). Hughes' RFC assessment indicated that Plaintiff could frequently lift and/or carry ten pounds; however, Dr. Hernandez changed this to twenty-five pounds. (Tr. 170, 193).

was more than consistent with the minimal medical evidence of record and the Plaintiff's hearing presentation. (Tr. 15). As stated above, the record is devoid of any evidence supporting the more restrictive limitations set forth in Dr. Hoskins' report. Consequently, the Court concludes that even if ALJ Lawrence understood that one of the two RFC assessments was completed by a non-physician, she would have reached the same result, and any error in attributing Hughes' assessment to that of a physician does not warrant remand.

## II. The Hypothetical Posed to the VE Accurately Reflected the Limitations Contained in Plaintiff's RFC

Plaintiff next contends the Commissioner did not sustain his burden at Step 5 of the sequential evaluation process because the hypothetical posed to the VE did not accurately portray his impairments. Plaintiff's argument has several components. First, Plaintiff argues that the hypothetical posed to the VE did not accurately convey one-time psychological examiner Dr. Hundley's opinion that Plaintiff's ability to interact appropriately in a work environment and handle the stresses of work was "fair to guarded." (Tr. 147). Second, Plaintiff asserts that the ALJ erred by omitting any limitation concerning Dr. Hundley's opinion that Plaintiff had a "fair" ability to maintain attention and concentration. Finally, Plaintiff argues that since the ALJ improperly calculated Plaintiff's physical RFC, the VE was not asked to comment as to whether Dr. Hoskins' significant limitations for walking, climbing stairs, lifting and carrying would limit the claimant to sedentary work.

As Plaintiff correctly states, ALJ Lawrence accepted Dr. Hundley's conclusions with regard to Plaintiff's mental RFC. (Tr. 15). Dr. Hundley found Plaintiff's "ability to understand and remember simple instructions is fair and his ability to maintain attention and

concentration is fair. His ability to interact appropriately in a work setting is fair to guarded and his ability to handle the stresses typically associated with a work environment is fair to guarded." (Tr. 147). The terms "fair" and "guarded" were not defined in Dr. Hundley's narrative mental status evaluation. (Tr. 144-147). At the hearing, the ALJ asked the VE to assume an individual with the same work history and background as Plaintiff who was restricted to a medium exertional level with occasional crouching, crawling and climbing and precluded from exposure to dust, fumes, smoke, chemicals or noxious gases. (Tr. 30). Furthermore, the ALJ asked the VE to assume someone "restricted to simple work with – at a low work stress level, and where he has little contact with people." (Tr. 30). Considering those restrictions and the VE's testimony, the ALJ determined that Plaintiff could perform occupations such as dishwasher, hand packer, material handler and production worker. (Tr. 16-17).

A VE's testimony in response to a hypothetical question will provide substantial evidence of claimant's RFC to perform work in the national economy where the question posed accurately reflected the claimant's physical and mental impairments. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (though an ALJ need not list a claimant's medical conditions, the hypothetical should provide the vocational expert with the ALJ's assessment of what the claimant "can and cannot do"). It is well established, however, that an ALJ need only include those restrictions which enjoy support when assessed against the backdrop of the entire record of objective medical evidence. *Stanley v. Sec'y Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994) (in formulating a hypothetical question, the ALJ need only incorporate those limitations which he has deemed credible).

Plaintiff's argument that the ALJ did not adequately apprise the VE of the restriction in his ability to interact appropriately in a work setting is unavailing. The ALJ restricted Plaintiff to work with a low stress level and little contact with people. (Tr. 30). This restriction more than encompasses a "fair to guarded" ability to interact appropriately in a work setting. Furthermore, there is no evidence of record that would compel a more limiting restriction. ALJ Lawrence noted Plaintiff's ability to function in an appropriate manner in the public domain, such as doctor's offices, grocery stores and other facilities. (Tr. 13). Plaintiff also presented no abnormal social behaviors during his hearing presentation. (Tr. 13). Moreover, Plaintiff reported to Dr. Hundley that, besides his wife, he has four to five "close friends," one of whom he has "quite a bit of contact with." (Tr. 146). Plaintiff provides no explanation or citation to the record as to why a different instruction would have better communicated his "fair to guarded" ability to interact appropriately in a work setting.

Plaintiff's second argument that the ALJ improperly excluded a restriction concerning Plaintiff's ability to maintain attention and concentration is also unpersuasive. Dr. Hundley found that Plaintiff had a "fair" ability to maintain attention and concentration, but ALJ Lawrence did not advise the VE of this "fair" ability. (Tr. 30). While Plaintiff assumes that a "fair" ability indicates that he has moderate limitations, Dr. Hundley's report fails to identify any limitation on Plaintiff's ability to maintain attention and concentration. (Tr. 144-147). In fact, Dr. Hundley noted that Plaintiff did not exhibit any lability or distractibility throughout the exam. (Tr. 145). Moreover, Dr. Hundley acknowledged Plaintiff's form of thought was adequate without circumstantiality, flight of ideas, loosening of associations, tangentiality or persecutory or blocked thinking. (Tr. 145). Furthermore, at the hearing, ALJ Lawrence

found that Plaintiff was able to understand and follow the proceedings and all lines of questioning. (Tr. 13). Based on Dr. Hundley's examination and the record as a whole, it was entirely reasonable for ALJ Lawrence to perceive that Plaintiff's "fair" ability to maintain attention and concentration was not a limitation on his ability to perform work. Again, Plaintiff fails to provide any evidence that he was indeed restricted in his ability to maintain attention and concentration or that the ALJ's interpretation of Dr. Hundley's report was unreasonable.

Finally, for the reasons stated above, substantial evidence supports the ALJ's decision to discredit Dr. Hoskins' opinion that Plaintiff will have significant physical restrictions. Therefore, Plaintiff's third argument that the VE was not asked to comment as to whether Dr. Hoskins' significant limitations for walking, climbing stairs, lifting and carrying would limit Plaintiff to sedentary work must also fail.

### III. CONCLUSION

Therefore, for the reasons stated herein, the Court concludes that the ALJ's RFC determination and his finding that Plaintiff was not disabled for purposes of the Social Security Act is supported by substantial evidence. Although the record contains differing opinions as to the extent of Plaintiff's exertional and non-exertional limitations, the Court finds that the ALJ properly performed her duty as trier of fact in resolving the conflicts in evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. #10) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. #11) is hereby **GRANTED**; and

4. A Judgment affirming this matter will be entered contemporaneously herewith.

This 22nd day of February, 2011.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\London\6-10-02- Northern MOO.wpd